UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | CIVIL ACTION NO.: 1:19-cv-2345 |
| FURRY PUPPET STUDIO INC. | |
| *Plaintiff* | |
| vs. | **CAUSES OF ACTION:** |
| FALL OUT BOY; | 1. COPYRIGHT INFRINGE. |
| FALL OUT BOY, INC. (D/B/A CHICAGO X SOFTCORE SONGS); | 2. CONTRIB. INFRINGEMENT 3. VICAR. INFRINGEMENT |
| FOB TOURING, INC.; | 4. INDUCEMENT INFRING. 5. DECL. OF OWNERSHIP |
| PETER L. K. WENTZ III; | 6. DECL. OF ACCOUNTING |
| PATRICK M. STUMPH; | 7. CONSTRUCTIVE TRUST 8. BREACH OF CONTRACT |
| ANDREW J. HURLEY; | 9. UNJUST ENRICHMENT |
| JOSEPH M. TROHMAN; | |
| DCD2 ENTERTAINMENT, INC. (D/B/A DCD2 RECORDS); | |
| UNIVERSAL MUSIC GROUP, INC.; | |
| UMG RECORDINGS, INC. (D/B/A ISLAND RECORDS; D/B/A ISLAND US); | |
| SONY MUSIC ENTERTAINMENT; | |
| SONY/ATV MUSIC PUBLISHING LLC; | |
| SONY/ATV SONGS LLC; | |
| CRUSH MUSIC MEDIA MANAGEMENT INC.; | |
| BLOCK PARTY MEDIA, INC.; | |
| MANHEAD, LLC; | |
| *Defendants* | *JURY TRIAL DEMANDED* |

# CIVIL ACTION COMPLAINT FOR COPYRIGHT INFRINGEMENT AND RELATED CLAIMS

## Introduction

1.      This lawsuit concerns defendant band Fall Out Boy's widespread infringing exploitation of Plaintiff's copyrights and intellectual property. This is not the first time Fall Out Boy has taken an artist's creation without credit or compensation.

2.      Plaintiff Furry Puppet Studio Inc., a high-end designer, created two wearable llama puppet sculptures which have now become central to Fall Out Boy's identity, brand, and music—and have been viewed nearly ***1 billion times*** on social media and other mediums.

3.      Plaintiff is a unique, innovative, and successful company based in Brooklyn, NY which creates, designs, and makes a variety of in-demand puppets, stuffed animals, and plush toys.

4.      Plaintiff was hired in early 2017 by the production company Rubrik House to provide two wearable puppets for the plot of the "Young and Menace" Fall Out Boy video.

5.      Plaintiff Furry Puppet delivered two striking and unique wearable, llama-like puppets to be used for the "Young and Menace" music video:

 

6.    These puppet sculptures are instantly recognizable to Fall Out Boy's fans.

7.    These puppets were in fact used to create the "Young and Menace" music video, which was released on April 27, 2017. At all points Plaintiff was told these puppets were for the "Young and Menace" music video and no other use was intended or identified by anyone.

8.    Plaintiff takes no issue with the use of the puppets in the "Young and Menace" project; it is the use far outside of that video that is infringing.

9.    At all points Plaintiff retained ownership of the copyrights in the llama puppet sculptures and no assignment or transfer of rights was ever signed or agreed to.

10.    Subsequently, Plaintiff became aware that Fall Out Boy was using the llama puppet creations in a way that Plaintiff never intended or agreed to, far outside the video the llamas had been made and provided for.

11.    Specifically, Fall Out Boy was (and is) exploiting the llamas by infringingly reproducing and displaying the puppets as merchandise, an iPhone app, the face of the band, the face of the 80-concert MANIA tour and album, in five additional music videos, and a new album called *Llamania*:



Fallout Boy Post, Instagram (April 19, 2018), https://www.instagram.com/p/BhwZUC6gFrM/







12.     Fall Out Boy has a cavalier approach to intellectual property protections, writing on the *Llamania* album: "All rights reserved, unauthorized duplication is highly encouraged."

13.     The llamas took on a life of their own. They were given names by Fall Out Boy—Frosty and Royal Tea—and became de facto members of the band.

14.     The scope of infringement, beyond the initial video the llamas were intended to be used in, is far too large to fully relate in this complaint given the all-encompassing way Fall Out Boy used the llamas, but the llamas were reproduced, performed, displayed, and copied in derivative creations without authorization (in whole or in part) including but not limited to the following ways:

    a.  The llamas had an entire album named and centered around their images, and released, called "*Llamania*";

    b.  The llamas' likenesses were extensively used in merchandizing (shirts, plush toys, stickers, key chains, cards, etc.), including in major chains such as Hot Topic.

    c.  They became the face of the band's 80-concert MANIA tour, and were extensively used on promotional posters and social media;

    d.  They went on tour with Fall Out Boy and performed on stage in over 80 concerts, with a video introduction that also used the llamas;

    e.  Fall Out Boy used the llamas as part of a massive social media push to promote the band, and the MANIA tour and album—which raked in hundreds of millions of views—and the llamas are currently the banner photo for the Fall Out Boy Facebook page and branded all over the band's Instagram page;

f.  The llamas were featured in multiple music videos on VEVO other than "Young and Menace," *including the videos for all singles on the* **MANIA** *album*: "Hold Me Tight or Don't" (24.5 million views), "Last of the Real Ones" (23 million views), "Wilson" (5.3 million views), "Champion" (3.4 million views), and "Bishop Knife Trick" (2.6 million views, not a single);

g.  they were heavily used to sell the MANIA album, the songs on the album, and various remixes of the songs on the album;

h.  they performed and were displayed with the band on Good Morning America;

i.  they were used on social media to promote appearances by the band on national TV shows including but not limited to Ellen and Late Night with Seth Myers;

j.  the llamas gave interviews to promote the MANIA tour:

k.  the band launched an app called "EMO-ji" in the Apple iTunes store, which exclusively used Plaintiff's llamas, to promote Fall Out Boy and its music sales (defendant Wentz personally promoted the app); and

l.  the llamas were used for album art for "The Complete Collection" released in mid-2018, a vinyl collection of all Fall Out Boy albums.

15.    Defendant band member Pete Wentz is clear on defendant Manhead's website, the band's merchandiser, that the images associated with the band are integral to promoting and selling music:

> We have always seen the merchandise and clothing aspects of our band as having a through thread to the music - we have envisioned it being one vision that is unique and strange and singular unto itself.

This precisely describes how the llamas are used by Fall Out Boy.

16.    The llamas are on track to be viewed one billion times, if they have not already passed that number. One GIF of one of the llamas was the fourth most popular GIF in 2017, with 197 million views. Megan Armstrong, "GIPHY Names Top 25 GIFs of 2017: Lady Gaga's Super Bowl Jump, Nicole Kidman Clapping & More," Billboard (December 7, 2017), https://www.billboard.com/articles/news/8062522/giphy-top-gifs-2017-lady-gaga-super-bowl-jump. *It now has 250 million views*.

17.    All told, llama GIFs created and promoted by Fall Out Boy using Plaintiff's copyrights on social media have at least 620 million views, demonstrating that Plaintiff's

copyrights are instrumental to Fall Out Boy's online presence and selling their music. In total, the llamas have been viewed nearly one billion times—if not more—including in the GIFs, five videos, pictures, albums, merchandise, television, an app, concerts, and various other mediums.

18.     At most, Plaintiff gave an implied limited nonexclusive license to the production company Rubrik House for the two puppets to be used in the "Young and Menace" music video they were specifically provided for. The scope of the license never permitted Defendants to use the puppets beyond that video, nor was any permission to sublicense the use of the puppets ever granted either implicitly or directly.

19.     Fall Out Boy's hugely successful duplication, performance, display, and creation of derivative works of the two llama puppet sculptures outside the scope of the limited nonexclusive license—without credit, compensation, or authorization to/from Plaintiff—is as plain a case of copyright infringement as there can be, and Plaintiff asks this Honorable Court to grant it all available relief.

### Plaintiff Furry Puppet Studio Inc. is Approached by Rubrik LLC to Create Two Life-Size Wearable Puppets for A Fall Out Boy Music Video for the Song "Young and Menace"

20.     Plaintiff Furry Puppet Studio Inc. creates a variety of unique and innovative puppets, stuffed animals, sculptures, plush toys, and other works of art.

21.     As a result of Plaintiff's creative and memorable designs, and impeccable craftsmanship, Plaintiff was approached by production company Rubrik LLC (d/b/a Rubrik House) in March 2017 to create two life-size, wearable puppets which they said were to be used in a music video for the Fall Out Boy song "Young and Menace." Defendant Crush Music, Fall Out Boy's manager, was also included on emails.

22.     These puppets are sculptures. See Exhibit 1 - Llama Mom Copyright Registration; Exhibit 2 - Llama Dad Copyright Registration.

23.     Rubrik is and/or was a production company which creates music videos for its clients. Rubrik is the entity that negotiated and paid the commission.

24.     Plaintiff did not have an ongoing relationship with Rubrik or Defendants, and did any work on a per project basis.

25.     The puppets were commissioned by Rubrik expressly for this one music video—based on the plot of the video they had to be monsters of some sort—and no other use of the puppets outside the music video was ever identified or contemplated by Rubrik, Plaintiff, or Defendants when commissioned. Indeed, the puppets are so unique that they could only be foreseen as being used for the specific purpose.

26.     Rubrik gave a vague idea of what the puppets should look like by sending a storyboard for the "Young and Menace" video. See Exhibit 4 - Storyboard. Rubrik also sent two images/rough sketches of random monsters, and a video of the GE commercial "Ideas are Scary." See Exhibit 3. Defendant Crush Music echoed Rubrik's suggestions.

27.     None of the images provided were used to create the llamas, as even a cursory comparison of the llamas and the images in Exhibit 3 and Exhibit 4 demonstrate.

28.     After Plaintiff looked at the storyboard for the "Young and Menace" video, it decided to use a llama-like monster ("Llama Mom") it had *previously created in 2015*. In addition, Plaintiff created another llama monster ("Llama Dad") from scratch.

29.     The only contribution utilized from Rubrik or anyone else was the general *idea* that the puppets should look like monsters.

30.     Plaintiff is the only one who contributed any original creative or artistic or copyrightable expression to the llama puppets and is the only one who fixed the designs in a tangible medium.

31.     The provision and use of these llama puppets was expressly based on Rubrik's statements which made it clear that the puppets were intended for use in the "Young and Menace" video project (based on the plot of the video). No other specifications or purposes were given by Rubrik or Defendants.

32.     When Plaintiff was hired to provide monster puppets in March/April 2017, Rubrik and/or Defendants had no intention of using the puppets for anything other than the "Young and Menace" video. Defendants first decided to use the puppets outside of the video after the puppets proved popular following the "Young and Menace" video's release.[1]

33.     The puppets are completely original works by Plaintiff and not based on any other copyrightable work.

34.     Despite the concept for the llama puppets being created and executed in 2015, Fall Out Boy dishonestly and absurdly claimed in a prelitigation exchange—apparently unaware of the llamas' origins—that they were joint authors/creators of the llama puppets in 2017. This argument is not only impossible (barring time travel) but is utterly frivolous because Rubrik and/or Crush's (not even Fall Out Boy) only contributions were to provide *other artists'* monster concepts to Plaintiff for ideas. Not only were these ideas not used, but ideas are not even copyrightable expression which could give rise to joint authorship. See Exhibit 3. As noted *infra*, this is not the first time Defendants have attempted to claim another's work as their own.

35.     No person or entity other than Plaintiff had any involvement in the process of creating the llamas except to specify that the puppets should be monster-like. No copyrightable expression was contributed to the llamas by anyone except Plaintiff's employees.

---

[1] This is evidenced in part by the fact that defendant Manhead's initial merchandize offering for the MANIA album on the date the "Young and Menace" video was released contained nothing related to the llamas. See ManheadMerch, Instagram (4/27/2017), https://www.instagram.com/p/BTZUBAIDAyc/.

36.     The sculptures are original, novel, and all copyrights in the sculptures are owned by Plaintiff. No copyrights in the sculptures have been assigned or transferred by Plaintiff to anyone else.

37.     The puppets were never licensed to Rubrik for any purpose other than to make the "Young and Menace" video—the project specifically identified by Rubrik for why Plaintiff was providing the puppets. No one in March/April 2017 intended the puppets to be used for anything else.

38.     The puppets are copyrighted sculptures under the registration numbers: VAu001332963 and VAu001332960. See Exhibit 1 - Llama Mom Copyright Registration; Exhibit 2 - Llama Dad Copyright Registration.

39.     The puppets were in fact used by Rubrik to create the "Young and Menace" music video, which has become quite successful, garnering as of the date of this filing over 17 million views on YouTube since it was released on April 27, 2017.

40.     Plaintiff gave Rubrik an implied limited nonexclusive license to use the puppets, the scope of which was restricted to the project expressly identified by Rubrik as to why the puppets were being provided and created: the "Young and Menace" music video. Rubrik was permitted to use the llama puppets for all purposes necessitated by *that project*, but not beyond.

41.     "One who obtains permission to use a [copyright] . . . may not exceed the specific purpose for which permission was granted." See Gilliam v. American Broadcasting Companies, Inc., 538 F.2d 14, 19-21 (2d Cir. 1976). An implied nonexclusive license "permits the use of a copyrighted work *in a particular manner*." I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996) (emphases added). "[A] seller grants a buyer an implied license to use a product for the purpose for which the seller sold it to the buyer." Foad Consulting Group, Inc. v. Azzalino, 270 F. 3d 821, n.10 (9th Cir. 2001).

42.    A limited license allows the use of a copyrighted work only for those uses intended and foreseeable to complete the project for which the work was provided—in this case the specified music video. Other uses of the llamas outside creating and distributing the "Young and Menace" music video were not remotely foreseeable or contemplated—and are infringing because they are outside the scope of the implied license.

43.    The objective intent of all entities and/or parties at the time the implied nonexclusive license was created was that these puppets were being created/provided to be used for the specified video project. There was no other intent.

44.    In fact, the widespread uses of the llamas puppets (which Rubrik had specified were being provided for a specific music video) are so far beyond the scope of the initial project that it would require omniscient clairvoyance from Plaintiff to anticipate that Defendants would, for example, make and sell derivative works as merchandise, use the puppets to brand the band, became the face of the tour, use in numerous other videos, create a musical album, and create a social media app.

45.    Rubrik had no ability to sublicense or assign the use of the llama copyrights to Defendants outside the "Young and Menace" video. No one else had the ability to sublicense or assign the use of the llama puppets to Defendants outside of the "Young and Menace" video.

46.    The very nature of the intellectual property created/provided (puppets), in combination with Defendants' express statements about the purpose and use of the puppets (for a specific video), does not reasonably allow the conclusion that Plaintiff could have possibly foreseen how the puppets ended up being used far beyond the original project they were provided for (branding a band, manufactured as derivative works for merchandise, creating a musical album, social media emojis, etc.).

47.     Indeed, at the time the limited license was created in March-April 2017, Defendants had no intent to use the llamas outside the "Young and Menace" video. Defendants' decision to use the puppets beyond the "Young and Menace" video was made after the llamas grew in popularity following the release of the video.

48.     Because the puppets are so unique, and were provided/created for such a specific purpose (the plot of a music video), Defendants could not have intended to use the puppets outside the video until the puppets (unexpectedly) became famous, gained secondary significance, and were associated with the band.

49.     In March/April 2017, Rubrik affirmatively limited the scope of the nonexclusive license, stating that these puppets were for the "Young and Menace" video, and providing a storyboard for the video. See Exhibit 4. This was confirmed by defendant Crush's input.

50.     Later in 2017 defendant Crush expressly confirmed again that the puppets had only been "made *for* the [Young and Menace] music video earlier this year." See Exhibit 5 (emphasis added). Given the clear statements by defendant Crush, the license granted to Rubrik was clearly limited to the particular identified project the puppets were created for.

51.     Defendants cannot show that Plaintiff had any knowledge or expectation or intent the puppets would be used beyond the "Young and Menace" video.

52.     When a nonexclusive licensee clearly delimits the use of copyrights to a specific project, the licensee is bound by the limits it established. If, for example, an artist was hired by a company to provide a design for a specific mailing based on the content of a mailing, but then a parent company later decided to use the design as their nationwide logo, it would be apparent that the use of the logo was far outside the scope of the initial implied nonexclusive license.

53.     Rubrik and Defendants do not own the llama copyrights, either as works for hire or by any other method.

54.     Section 202 of the Copyright Act makes it clear that a person may purchase a physical work, but that such purchase does not transfer the copyrights in the work. 17 U.S.C. § 202. Consider that a private purchaser of a painting owns the physical painting, but the copyright owner still owns the exclusive rights to duplicate, reproduce the painting, and publicly display the painting—absent an express written assignment. Likewise, Rubrik may have purchased the physical puppets, but neither it nor any Defendant had any permission to exploit Plaintiff's copyrights in the puppets outside of the scope of the limited nonexclusive implied license granted for the "Young and Menace" video.[2]

55.     Fall Out Boy and Defendants are sophisticated and experienced companies and musicians who knew or should have known that when physical art is sold, the creator of the art still owns the Section 106 exclusive rights absent a written assignment.

56.     In September 2017, defendant Crush Music contacted Plaintiff and asked about making duplicates of the llama puppets and/or repairing them. Crush expressly acknowledged that the llama puppets were "made *for* the [Young and Menace] music video earlier this year." See Exhibit 5 (emphasis added). This illustrates that Defendants were well aware that the prior license to use the llamas puppets was limited to the "Young and Menace" video.

57.     Defendant Crush asked for the duplicates to be delivered by October 15, 2017, giving the reason as "the tour starts" by that date. Id. The emails did not state how the puppets would be used on tour, nor did Plaintiff know how they would be used. For all Plaintiff knew they were being used to greet fans backstage, as Plaintiff was not privy to the band's plans.

58.     Plaintiff noted twice in response that the "current costumes were built for [the "Young and Menace"] video shoot" and were *not* made for unspecified use on a tour. Id.

---

[2] Rubrik has not been named as a defendant because Plaintiff has seen no evidence that Rubrik encouraged the exploitation of the llamas outside the "Young and Menace" video. However, should evidence arise indicating otherwise, Plaintiff reserves the right to bring suit against Rubrik.

59.     At no point was Plaintiff ever told that the puppets would be consistently performing on stage, or for all 80 concerts on the tour—and it certainly could not be inferred that they were being used for merchandise (t-shirts, key chains, stuffed animals), GIFs, television appearances, emojis, apps, and social media. At no point did Plaintiff give permission for the puppets to be used/exploited in the widespread way they were.

60.     Plaintiff was not available to duplicate or repair the puppets for defendant Crush, but gave recommendations for who could make repairs, as Defendants had the right to repair the physical puppets and use them in non-infringing ways. Id.

61.     In September 2017, no additional license of any kind was granted by Plaintiff to exploit the puppets outside the original video, no contract was consummated, and Plaintiff never received anything that could be characterized as valid consideration from Defendants.

62.     While the statements in September 2017 from Defendants can be used to show that they plainly knew the scope of their nonexclusive license was limited to the project they were initially provided for, the "Young and Menace" video, the September 2017 emails cannot be used to retroactively expand the scope of the March/April 2017 license given to Rubrik.

63.     Plaintiff did not believe Defendants would improperly use the puppets on the tour and did not think to pursue the matter further given the anodyne nature of the exchange.

64.     At no point did Plaintiff relinquish any rights in the puppets, or intend to do so. At no point did Plaintiff waive or abandon its copyrights in the puppet sculptures.

### The Puppets are Used without Permission by Defendants Far Outside the Scope of the Limited Nonexclusive License

65.     Plaintiff had provided the puppets to Rubrik and Defendants in April 2017 for the creation of the Fall Out Boy "Young and Menace" video. No other use was ever discussed with Rubrik, defendant Crush, Fall Out Boy, or anyone else—and no one had the ability to sublicense

Fall Out Boy to use the puppets outside the "Young and Menace" video. Plaintiff never authorized or licensed anyone to use and/or exploit the puppets outside of that music video.

66.    Yet, Fall Out Boy and Defendants were and are duplicating the puppets, creating derivative works using the puppets' likenesses, and otherwise using the puppets to brand the band, create and sell merchandise, make an iPhone app, promote the MANIA tour, promote and sell the *MANIA* album, create and sell the *Llamania* album, perform on stage and video at concerts, and use the puppets in numerous other music videos. None of this was within the scope of the original limited implied license, and none of it was foreseeable to Plaintiff.

67.    Unauthorized uses of the llama puppets will eclipse 1 billion views online in the near future—if they have not already. The unauthorized uses by Defendants have been extraordinarily widespread and include but are not limited to:

      a.  The llamas had an entire album named and centered around them, and released, called "*Llamania*", using their images;



    b.  they were extensively used in merchandizing (shirts, plush toys, stickers, key chains, cards, etc.), including in major chains such as Hot Topic;





ManheadMerch, Instagram (9/9/2018), https://www.instagram.com/p/BnhF-LvAvAv/

 

https://www.hottopic.com/product/fall-out-boy-skating-llama-muscle-t-shirt/11274114.html
https://www.hottopic.com/product/fall-out-boy-mania-llama-lanyard/11308044.html



ManheadMerch, Instagram (1/18/2018), https://www.instagram.com/p/BeGNCtqnAjH/



Fall Out Boy, Instagram (11/13/2017), https://www.instagram.com/p/BbdHqZAAUju/



ManheadMerch, Instagram (3/31/2018), https://www.instagram.com/p/Bg_dg4uAFpY/



ManheadMerch, Instagram (11/17/2017), https://www.instagram.com/p/Bbnpv0enu_9/







    c.  The llamas became the face of the band's 80-concert MANIA tour, and not only were used on promotional posters and social media, but had promoted interactions with fans at the concerts;





Fall Out Boy Post, Instagram (August 27, 2017),
https://www.instagram.com/p/BYUqEQrAxqW/





Fall Out Boy Post, Instagram (January 19, 2018), https://www.instagram.com/p/BeHor1sAC1e/





d.  The llamas not only promoted the MANIA tour, but performed on stage in over 80 concerts, with a video introduction that also featured the llamas;





"Fall Out Boy - Llama/Monster Scene | MANIA Tour | Cleveland, OH 10/20," User: Vizorous, YouTube (October 22, 2017), https://www.youtube.com/watch?v=L8EaxvyWIJw



Fall Out Boy Post, Instagram (April 30, 2018), https://www.instagram.com/p/BiMta0_gQYc/

    e.   Defendants used the llamas as part of a massive social media push to promote the MANIA tour and album—which raked in hundreds of millions of views—and the llamas are currently the banner photo for the Fall Out Boy Facebook page and branded all over the band's Instagram page;







Fall Out Boy Post, Instagram (January 17, 2018),
https://www.instagram.com/p/BeEPedRn9OK/



Fall Out Boy Post, Instagram (January 17, 2018),
https://www.instagram.com/p/BeDzAwBAvaV/



Fall Out Boy Post, Instagram (January 12, 2018), https://www.instagram.com/p/Bd3RlKYgzpb/



Fall Out Boy Post, Instagram (January 12, 2018), https://www.instagram.com/p/Bd1PFmRA87I/



Fall Out Boy Post, Instagram (December 25, 2017),
https://www.instagram.com/p/BdIxeVpAiOh/



Fall Out Boy Post, Instagram (December 25, 2017),
https://www.instagram.com/p/Bcsms5nA6Sv/



Fall Out Boy Tweet, Twitter (December 7, 2017),
https://twitter.com/falloutboy/status/938866471211536384?lang=en



Megan Armstrong, "GIPHY Names Top 25 GIFs of 2017: Lady Gaga's Super Bowl Jump, Nicole Kidman Clapping & More," Billboard (December 7, 2017), https://www.billboard.com/articles/news/8062522/giphy-top-gifs-2017-lady-gaga-super-bowl-jump

    f.  The llamas were featured in multiple music videos for Fall Out Boy on YouTube/VEVO, other than "Young and Menace," including ***all singles for the MANIA album***: "Hold Me Tight or Don't" (24.5 million views), "Last of the Real Ones" (23 million views), "Wilson" (5.3 million views), "Champion" (3.4 million views), and "Bishop Knife Trick" (2.6 million views, not a single);

g.  they were heavily used to sell the MANIA album (which hit number 1 on the charts), the songs on the album, and various remixes of the songs on the album;





Fall Out Boy, Instagram (7/24/2018), https://www.instagram.com/p/BlnkEh2H9YN/



Fall Out Boy Post, Facebook (June 26, 2018),
https://www.facebook.com/falloutboy/photos/a.169128975779/10155325023220780/?type=3&theater

h. they appeared with the band, twice, for performances on Good Morning America to promote Fall Out Boy, and the MANIA album and tour, to millions of viewers on TV and social media;





Fall Out Boy Post, Instagram (July 27, 2018), https://www.instagram.com/p/Blvl2mun-Ey/



Fall Out Boy Tweet, Twitter (July 27, 2018),
https://twitter.com/falloutboy/status/1022899157177122816?lang=en



"Fall Out Boy Mania Good Morning America Coat Clip," User: Jayne LeFavi, YouTube (Jan. 19, 2018), https://www.youtube.com/watch?v=JBSfkoAGdyU



Good Morning America Tweet, Twitter (Jan. 19, 2018),
https://twitter.com/gma/status/954352159419662336?lang=en

    i.   they promoted appearances by the band on national TV shows including but not limited to Ellen, and Late Night with Seth Meyers;



Fall Out Boy Tweet, Twitter (Jan. 26, 2018),
https://twitter.com/falloutboy/status/956990926794166272



https://www.facebook.com/falloutboy/videos/10155272371330780



https://www.facebook.com/falloutboy/videos/10155372694650780/

j.   the llamas gave interviews to promote the MANIA tour:



"Fall Out Boy's Llamas - World Exclusive First Interview," User: Rock Sound, YouTube (April 4, 2018), https://www.youtube.com/watch?v=dtNxTjkZwPg&t=3s

k.   the band created social media emojis for the llamas to promote Fall Out Boy and its music sales, including defendant Wentz personally promoting such infringement, and used those emjois to launch an app called "EMO-ji" in the Apple iTunes store; and



EMO-ji,   Apple,   https://itunes.apple.com/us/app/emo-ji-by-fall-out-boy/id1333694483?mt=8 ("Ride the wave with EMO-ji presented by Fall Out Boy. All the llama monster stickers you can handle. Use them to tell your friends how you really feel. Get to it (or don't)").



Fall Out Boy Post, Instagram (April 11, 2018), https://www.instagram.com/p/BhcYiHUAZAL/





https://itunes.apple.com/us/app/emo-ji-by-fall-out-boy/id1333694483?mt=8

l. the llamas were used for album cover art for "The Complete Collection" released in mid-2018, a vinyl collection of all Fall Out Boy albums;



68.     All of these identified uses are unauthorized—as are all uses of the llamas outside of the "Young and Menace" video—and are infringing.

69.     The unauthorized creation of plush toys using Plaintiff's intellectual property is especially insulting because the creation and sale of plush toys/stuffed animals is a large part of Plaintiff's business.

70.     Even defendant DCD2 Records has been creating and sharing pictures of the llamas, incorporated into other artists' albums, showing the llamas' popularity and Defendants' intent and purpose to popularize and monetize Plaintiff's intellectual property:



71.     These instances are not, by any extent, the totality of the infringement that took place and are instead a small representative sample of the thousands of instances of infringement.

72.     The infringement is continuing. When the MANIA album was recently nominated for best rock album Grammy, Fall Out Boy immediately posted on Instagram, Facebook, and Twitter using the llamas to promote themselves and their music:



Fall Out Boy Post, Instagram (December 7, 2018),
https://www.instagram.com/p/BrF5rgeFW5R/



Fall Out Boy Tweet, Twitter (December 7, 2018),
https://twitter.com/falloutboy/status/1071072858946838530



Fall Out Boy Post, Facebook (December 7, 2018),
https://www.facebook.com/falloutboy/videos/288030371849449

73.    Defendant Fall Out Boy has millions of followers on social media, including 9.2 million likes and 8.6 million followers on Facebook, 4.5 million YouTube subscribers, 3.1 million followers on Instagram, and 3.24 million followers on Twitter. Their social media posts typically each receive hundreds of thousands, if not millions of views.

74.     Plaintiff is due a licensing fee for each and every infringing use of their copyrights, including but not limited to television appearances by the llamas, concert appearances, music video appearances, use on the *Llamania* album, public display, merchandizing, advertising revenue, promotion and social media promotion, and app and emoji use.

75.     In addition to a licensing fee for all infringing activity, Plaintiff is due compensation for all direct and indirect profits Defendants received as a result of infringing Plaintiff's intellectual property.

76.     These infringing uses of Plaintiff's llama puppets—to brand the band's identity and music as inextricably interconnected to the llamas—have directly and/or indirectly caused Defendants to earn significant monies, including but not limited to album sales, song sales, digital song and album sales, streaming revenue, royalties, advertising revenue, merchandise sales, brand premium, and concert revenue.

77.     Despite using Plaintiff's intellectual property without authorization in a most widespread manner, never once have Defendants credited Plaintiff as the creator of the llama puppets which they have used to define the band.

78.     It is simply ***absurd*** that an operation as sophisticated as Fall Out Boy would think that a limited license given to a ***third party*** to use copyrighted works to create a specific music video would allow ***them*** to—without further compensation/authorization to and from Plaintiff—duplicate the works for merchandizing, create five more music videos, create an album centered around the llamas, reproduce the llamas on social media, perform with them in concert, brand the band, and promote its tours.

79.    Note that Plaintiff takes no issue with the use of the puppets in the "Young and Menace" video and dissemination of that video[1]—but Defendants' continuing use and exploitation of the puppets is far beyond the limited license given.

80.    Fall Out Boy has also repeatedly encouraged and induced the media, television broadcasters, social media, and its millions of fans to infringingly display, copy, and/or reproduce derivative works of Plaintiff's work without authorization. Defendant Fall Out Boy has then itself posted these derivative creations to help sell music. This too was unauthorized.

81.     Given that Fall Out Boy has been one of the most famous bands in the world for over a decade, and has a sophisticated corporate and legal team intimately familiar with clearances and copyright law, it is obvious that all Defendants knew their use of Plaintiff's intellectual property was well beyond the authorized scope of the limited license for use in the "Young and Menace" video.

82.    Indeed, it is known that Fall Out Boy and Defendants are well aware of copyright law, and intellectual property protections, because defendant Wentz and the band blatantly copied lyrics from Philadelphia musician and poet Wesley Eisold without permission, who as a result had to be later credited as a writer on three Fall Out Boy songs.

83.    All initial and predicate acts of infringement occurred in the United States, entitling Plaintiff to damages on a worldwide basis.

84.    None of the allegedly infringing uses of Plaintiff's work are incidental or fair use or within the scope of any license.

---

[1] For instance, this suit does not ask to recover any advertising or licensing revenue Defendants received by exploiting the "Young and Menace" video.

85.    As a result of Defendants' actions and omissions they are liable for, *inter alia*, copyright infringement and have caused Plaintiff harm and damages. Defendants are liable for, including but not limited to, the following:

    a.    Licensing fees;

    b.    Profits (Direct and indirect);

    c.    Actual damages;

    d.    Compensatory damages;

    e.    Monetary damages;

    f.    Statutory damages;

    g.    Punitive damages;

    h.    Equitable and injunctive relief;

    i.    Attorney's fees and costs;

                         *****

# PARTIES

## PLAINTIFF FURRY PUPPET STUDIO INC.

86.     Plaintiff is a New York corporation.

87.     It owns all copyrights in the llama puppets, registered with the Copyright Office as VAu001332963 and VAu001332960. See Exhibit 1; Exhibit 2.

88.     Defendants contacted and contracted with Plaintiff in New York regarding the design, creation, and commissioning of the llama puppet sculptures.

## DEFENDANT FALL OUT BOY

89.     Fall Out Boy is a band comprised of four members, defendants Peter Wentz, Patrick Stumph, Andrew Hurley, and Joseph Trohman.

90.     Upon information and belief, defendant band is a partnership or similar entity.

91.     Defendant has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights without permission.

92.     Defendant band and its members have infringed Plaintiff's copyrights in the Southern District of New York (including by performances, television appearances, sales of records, and/or sales of merchandise), and carry on substantial business by and through their agents in New York City. The band's label DCD2 Entertainment, is headquartered in Manhattan, as is the band's manager Crush Management, headquartered in Manhattan, and its publisher, Sony, is headquartered in Manhattan.

93.     Whenever Plaintiff refers to defendant band Fall Out Boy he is also referring to defendants Wentz, Stumph, Hurley, and Trohman.

94.     Defendant band and its members own Fall Out Boy's music and music videos, including from the MANIA album.

95.     At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

96.     At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

97.     Defendant has received significant financial benefits as a result of the infringement.

## Defendant Fall Out Boy, Inc. (d/b/a Chicago X Softcore Songs)

98.      Defendant Fall Out Boy, Inc. is an Illinois corporation, believed to also do business under the name Chicago X Softcore Songs.

99.     Defendant corporation is believed to be owned by defendants Wentz, Stumph, Hurley, and Trohman.

100.    Whenever Plaintiff refers to defendant band Fall Out Boy and/or its members, it is also referring to this corporate defendant, and vice versa. Plaintiff incorporates by reference all averments regarding defendant band Fall Out Boy.

101.    Defendant has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights without permission.

102.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

103.    At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

104.    Defendant has received significant financial benefits as a result of the infringement.

## Defendant FOB Touring, Inc.

105.    Defendant FOB Touring, Inc. is an Illinois corporation which is believed to be headquartered in Manhattan, New York City and otherwise doing significant business there.

106.    Defendant FOB Touring has directly infringed Plaintiff's work by display and duplicating the puppets in promotions, marketing, advertising, on tour, and in other circumstances.

107.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

108.    At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

109.    Defendant has received significant financial benefits as a result of the infringement.

## Defendant Peter L. K. Wentz III

110.    Peter Wentz is an adult male who plays bass guitar for the band Fall Out Boy and has at all relevant times been a member of the band.

111.    Wentz is also the owner of defendant DCD2 Records with defendant Stumph, which is based in Manhattan, New York City.

112.     Defendant has directly infringed Plaintiff's copyrights by using the llama puppets for, including but not limited to, performances, album art, merchandise, and/or branding.

113.     At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

114.     At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

115.     Defendant has received significant financial benefits as a result of the infringement.

**DEFENDANT PATRICK STUMPH**

116.     Patrick Stumph is the lead singer for the band Fall Out Boy and has at all relevant times been a member of the band.

117.     Stumph is also the owner of defendant DCD2 Records with defendant Wentz, which is based in Manhattan, New York City.

118.     Defendant has directly infringed Plaintiff's copyrights by using the llama puppets for, including but not limited to, performances, album art, merchandise, and/or branding.

119.     At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

120.     At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

121.     Defendant has received significant financial benefits as a result of the infringement.

## DEFENDANT ANDREW HURLEY

122.    Andrew Hurley is the drummer for Fall Out Boy and has been at all relevant times a member of the band. Hurely has done significant business in Manhattan directly related to the infringing exploitation of Plaintiff's copyrights in the two llama puppets.

123.    Defendant has directly infringed Plaintiff's copyrights by using the llama puppets for, including but not limited to, performances, album art, merchandise, and/or branding.

124.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

125.    At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

126.    Defendant has received significant financial benefits as a result of the infringement.

## DEFENDANT JOSEPH TROHMAN

127.    Joseph Trohman is lead guitarist for Fall Out Boy and has been a member of the band at all relevant times. Trohman has done significant business in Manhattan directly related to the infringing exploitation of Plaintiff's copyrights in the two llama puppets.

128.    Defendant has directly infringed Plaintiff's copyrights by using the llama puppets for, including but not limited to, performances, album art, merchandise, and/or branding.

129.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

130.    At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

131.    Defendant has received significant financial benefits as a result of the infringement.

## Def. DCD2 Entertainment, Inc.  (aka DCD2 Records, fka Decaydance)

132.    DCD2 is a California Corporation, headquartered in New York at 60-62 E. 11th St., 7th FL, New York NY 10003. This is the same address as defendant Crush.

133.    DCD2 has directly, contributorily, vicariously committed copyright infringement, and/or caused infringement to be committed, including in the Southern District of New York.

134.    DCD2 is owned by defendants Wentz and Stumph, and operates as Fall Out Boy's record label.

135.    Wentz is listed on corporate registrations as the CEO, CFO, and secretary, as well as the sole director.

136.    Defendant, through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution, public display, and public performance of Plaintiff's copyrights.

137.    At all points DCD2 had the right and ability to control or stop the infringing conduct but failed to do so.

138.    At all points DCD2 knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

139.    Defendant has received significant financial benefits as a result of the infringement.

**DEFENDANT UNIVERSAL MUSIC GROUP, INC.**

140.    Universal Music Group is a worldwide record company registered in Delaware and which maintains an office at 1755 Broadway, New York, NY.

141.    Universal Music Group distributes Fall Out Boy's music, and has received significant income as a result of the alleged infringements, including in New York City.

142.    When plaintiff refers to UMG, it is referring to all subsidiaries and fictitious names unless otherwise indicated.

143.    Defendant itself, and through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights.

144.    At all points UMG had the right and ability to control or stop the infringing conduct but failed to do so.

145.    At all points UMG knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

146.    Defendant has received significant financial benefits as a result of the infringement

**DEFENDANT UMG RECORDINGS, INC.**

147.    UMG Recordings, Inc. is a subsidiary of Universal Music Group.

148.    Island Records and Island US are divisions of UMG Recordings, which distribute Fall Out Boy's music, and UMG Recordings has received significant income as a result of the alleged infringements, including in New York City.

149.    Defendant itself, and through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights.

150.    At all points UMG had the right and ability to control or stop the infringing conduct but failed to do so.

151.    At all points UMG knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the llamas puppets (and/or permitting the use of the puppets) and/or Fall Out Boy's music.

152.    Defendant has received significant financial benefits as a result of the infringement.

**DEFENDANT SONY MUSIC ENTERTAINMENT**

153.    SME is a Delaware partnership.

154.    Its headquarters are at 25 Madison Ave, New York, NY.

155.    Sony owns and operates Sony/ATV Music Publishing, LLC and/or Sony/ATV Songs LLC.

156.    When Plaintiff refers to Sony Music, it is referring to all Sony entities and employees and agents.

157.    Sony acts as a publisher for Fall Out Boy's music. Sony has derived significant income from the allegedly infringing conduct, including in Manhattan, NY.

158.    Defendant itself, and through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights.

159.    At all points Sony had the right and ability to control or stop the infringing conduct but failed to do so.

160.    At all points Sony knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing and promoting Fall Out Boy's music and/or permitting the use of the puppets.

161.    Sony has earned significant financial benefits as a result of the infringement

**DEFENDANT SONY/ATV MUSIC PUBLISHING, LLC**

162.    Sony/ATV Music Publishing is a Delaware corporation, which is headquartered in New York City at 25 Madison Ave. 24th Floor, New York, NY 10010. When Plaintiff refers to "Sony/ATV" he is referring to all its parent and subsidiary corporations jointly. Sony/ATV owns "Sony/ATV Songs LLC."

163.    Sony/ATV is headquartered at 25 Madison Ave., New York City, NY.

164.    Sony/ATV is the publisher and/or owner for and of Fall Out Boy's music.

165.    Defendant itself, and through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights

166.    Sony/ATV has derived significant revenue from Fall Out Boy's infringing conduct.

167.    At all points Sony/ATV had the right and ability to control or stop the infringing conduct but failed to do so.

168.    At all points Sony/ATV knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing and promoting Fall Out Boy's music and/or permitting the use of the puppets.

169.    Defendant has received significant financial benefits as a result of the infringement

**SONY/ATV SONGS LLC**

170.    Sony/ATV is a Delaware corporation, headquartered at 25 Madison Ave., New York City, NY. When Plaintiff refers to "Sony/ATV" he is referring to all its parent and subsidiary corporations jointly.

171.    Sony/ATV Songs publishes and/or owns much of Fall Out Boy's music.

172.    Defendant, through its divisions and/or subsidiaries, has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of Plaintiff's copyrights.

173.    Sony/ATV Songs has derived significant income from the alleged infringement, including in New York City.

174.    At all points Sony/ATV had the right and ability to control or stop the infringing conduct but failed to do so.

175.    At all points Sony/ATV knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing and promoting Fall Out Boy's music and/or permitting the use of the puppets.

176.    Defendant has received significant financial benefits as a result of the infringement

**DEFENDANT CRUSH MUSIC MEDIA MANAGEMENT INC.**

177.     Crush Music is a Delaware corporation headquartered at 60-62 E. 11th St., 7th Floor, New York, NY 10003. This is the same address as defendant DCD2 entertainment.

178.    Crush manages the band Fall Out Boy, its members, as well as the label DCD2.

179.    Crush has had an active and ongoing role in the unauthorized use of the llama puppets, and has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of llama puppets.

180.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

181.    At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing and promoting Fall Out Boy's music and/or permitting the use of the puppets.

182.    Defendant has received significant financial benefits due to the infringing activity.

**DEFENDANT BLOCK PARTY MEDIA, INC.**

183.    Block Party Media is a New York corporation doing business out of 456 Prospect Place, #2R, New York, NY 11238.

184.    Block Party Media describes itself on LinkedIn: "Block Party is a social media agency recognized as a pioneer in chat marketing. We create content, tech, and advise on strategy for iMessage, Facebook, Twitter, Instagram, Messenger, Snapchat, LINE, WeChat, WhatsApp, Kik, Viber, Amazon Alexa, Google Home, and other platforms. Our clients include Netflix, American Museum of Natural History, Bloomberg Philanthropies, iHeartRadio, Reebok, Katy Perry, COTY, Major Lazer, Metallica, Fall Out Boy, Columbia Journalism School, Johns Hopkins, and International Committee of the Red Cross."

185.    Fall Out Boy and Defendants are clients of Block Party Media.

186.    Block Party Media, in coordination with defendant Crush and the other Defendants, manages Fall Out Boy's social media presence and creates and/or posts the images, videos, and GIFs that Fall Out Boy uses online, including copies of the llamas and substantially similar derivative creations.

187.    In addition, Block Party Media has launched an app for Fall Out Boy on the Apple iTunes store named "EMO-ji" exclusively using images of Plaintiff's llamas.

188.    Block Party Media has had an active and ongoing role in the unauthorized use of the llama puppets, and has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of llama puppets.

189.    At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

190.     At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing and promoting Fall Out Boy's music and/or permitting the use of the puppets.

191.     Defendant has received significant financial benefits due to the infringing activity.

## Defendant Manhead, LLC                    (d/b/a Manhead Merch)

192.     Manhead is a corporation headquartered in New York City at 136 Baxter St., Unit 1B.

193.     Manhead is a full service merchandise company that focuses on the music and entertainment industry, including for Fall Out Boy.

194.     Manhead has in fact made and/or sold merchandise which infringingly contains images or derivative images of Plaintiff's llamas, which it had no authorization to do.

195.     Defendant has reproduced, distributed and publicly performed and/or authorized the reproduction, distribution and public performance of the llama puppets.

196.     Manhead also operates "pop up" shops for Fall Out Boy, which open for several days in various cities and are flooded by fans. These pop up shops sell merchandise which depicts and reproduces the llamas.

197.     At all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so.

198.     At all points Defendant knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, publishing, selling, and promoting Fall Out Boy's music/merchandise and/or permitting the use of the puppets.

199.     Defendant has received significant financial benefits due to the infringing activity.

*****

# Jurisdiction & Venue

200.     This action is brought, and subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has federal question jurisdiction in this matter in that Plaintiffs seek damages and injunctive relief against the defendants named herein, including but not limited to under Sections 501 through 505 of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. The Court has pendant/supplemental jurisdiction over any claims asserted herein which arise under state law in that such claims flow from a common nucleus of operative fact.

201.     Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(1) – (3), 1391(c), 1391(d), and 1400(a) in that all defendants reside in this venue and/or are subject to personal jurisdiction in this District because they have sufficient minimum contacts with this jurisdiction, especially related to the unauthorized exploitation of Plaintiff's copyrights. Furthermore, Fall Out Boy's label (DCD2), its distributor (Universal), its publisher (Sony), and its manager (Crush Music) are all headquartered in this District, and all other Defendants have consistent contacts with those entities and their agents in this District (including related to the allegations in this complaint concerning the infringing exploitation of Plaintiff's copyrights) and can otherwise be found in this district.

*****

## COUNT I – COPYRIGHT INFRINGEMENT

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

202.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

203.    To make out a claim of copyright infringement a plaintiff must prove (1) ownership, (2) access by defendants to plaintiff's work, and (3) that the defendant(s) violated the owner's exclusive rights under Section 106 of the Copyright Act.

204.    Plaintiff designed, created, and owns all copyrights in the sculptural works at issue, the two llama monster puppets, registered with the Copyright Office under the numbers: VAu001332963 and VAu001332960. See Exhibit 1; Exhibit 2. At no point has Plaintiff assigned or transferred any copyright ownership in these works to Defendants or any other third party.

205.    Defendants had access to Plaintiff's works. There can be no dispute that the two llama puppets being used by Defendants, in ways that Plaintiff alleges are infringing, are the same llama puppets created by Plaintiff for the "Young and Menace" music video. There can be no dispute that the photographs, drawings, and/or other derivative depictions of the llamas are based on the striking and unique llama monsters created and copyrighted by Plaintiff, attached as Exhibits 1 and 2.

206.    Defendants have infringed Plaintiff's copyrights and violated its exclusive rights under section 106 of the Copyright Act of 1976 by making unauthorized use of Plaintiff's copyrights including but not limited to the following ways:

a. Defendants have infringed Plaintiff's copyrights under Section 106(1), by repeatedly copying without authorization Plaintiff's work by photographic reproduction, video reproduction, and by reproduction in other mediums, including but not limited to music videos, promotional videos, social media posts, social media emojis, posters, merchandise, and television broadcasts. All of these reproductions are substantially or strikingly similar to Plaintiff's work, and are obviously and explicitly based on the two llama puppets the copyrights in which are owned by Plaintiff.

b. Plaintiff owns the right to create derivative works of its two llama puppet copyrights under Section 106(2). Defendants have infringed Plaintiff's copyrights by preparing derivative works based upon Plaintiff's copyrighted works, all of which are substantially similar to Plaintiff's work, and are obviously and explicitly based on the two llama puppets, the copyrights in which are owned by Plaintiff. This includes but is not limited to images on social media, merchandising, posters, albums, in videos, and many other methods and mediums. All of these derivative works are substantially or strikingly similar to Plaintiff's work, and are purposefully designed to mimic and otherwise reproduce the likenesses of the two copyrighted llama puppets.

c. Plaintiff owns the right to distribute copies of the puppets to the public under Section 106(3). Defendants have infringed Plaintiff's copyrights by distributing copies of the copyrighted works to the public in violation of section 106(3), including but not limited to in music videos (other than "Young and Menace"), posters, as merchandise, on social media, and all other distribution methods

identified in this complaint. These copies are substantially similar to Plaintiff's copyrights, if they are not identical.

d. Under Section 106(5), Plaintiff owns the exclusive right to display and/or perform the copyrighted works publicly. Defendants have violated this right by displaying and performing Plaintiff's copyrighted sculptural works in concerts, in public, on television, and in many other instances without permission or authorization.

207. Defendants have also encouraged and otherwise induced third parties to infringe on Plaintiff's copyright, including but not limited to duplication by television transmission, photograph, drawings, social media posts, merchandise, and videos. Defendants have also encouraged and induced infringement by posting on social media images created by the third party infringers of Plaintiff's property—which is also directly infringing conduct.

208. Rubrik House had a limited nonexclusive license that only permitted them to use the two llama sculptures in the "Young and Menace" music video; no license, permission, or authorization was given for any other use of the llama puppet copyrights and Plaintiff always retained ownership of all copyrights in the llamas.

209. No one, including Rubrik House, had the ability to sublicense the use of the llama puppets to Fall Out Boy or the other Defendants outside the "Young and Menace" video.

210. At all points in time, it was expressly and explicitly clear based on Rubrik and Defendants' statements and conduct that the two llamas were licensed to Rubrik solely for the "Young and Menace" video, and were provided and/or designed for use in that specific video based on the video's plot.

211. At no point in time did Rubrik (or Fall Out Boy or Defendants) ask for permission to exploit the two llama puppets outside of the "Young and Menace" music video, nor was such use intended or foreseeable, especially in March/April 2017.

212.    At no point did Plaintiff ever sign any agreement transferring any ownership in the llama sculptures to Defendants.

213.    Defendants' widespread performance of the llama sculptures, display, creation of derivative works, copying of the works, distribution of copies and derivative works, and other infringing uses of the llama sculptures discussed in this complaint—all without any credit or authorization or compensation—plainly exceeded and continues to exceed the scope of the limited nonexclusive license Plaintiff gave in March/April 2017 to use the llamas to create the "Young and Menace" video.

214.    In fact, the uses of the llamas puppets (provided and made for the plot of a specific music video) to, for example, brand the band, promote the tour, in merchandise, use in numerous other videos, to create a musical album, and in a social media app are so unforeseeable and beyond the norm that it would require clairvoyance from Plaintiff to anticipate such uses.

215.    The damages attributable to and caused by the unauthorized use, display, derivative creations, performance, and reproduction of the llamas includes actual damages such as licensing fees for each unauthorized use of the llamas, and also direct and indirect profits of the Defendants and/or third parties attributable to the use of the llamas, including but not limited to concert revenues, album and song sales, mechanical royalties, streaming revenue, tour revenue, royalties, merchandise and apparel sales, and advertising revenue.

216.    Plaintiff is also entitled to statutory damages.

217.    Plaintiff is also entitled to equitable relief including but not limited to the issuance of injunctions, under 17 USC § 502, to prevent further copying, reproduction, and distribution of the works by Defendants.

218.    Such equitable relief should also include impoundment, under 17 USC § 503(a), of the puppets, copies of the puppets, derivative works based on the puppets, and/or equipment used in the infringement.

*****

# COUNT II – CONTRIBUTORY COPYRIGHT INFRINGEMENT

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

219.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

220.    To make out a claim for contributory infringement a plaintiff must show that the alleged infringer has knowledge of the infringing activity and induces, causes, or materially contributes to the infringing conduct of another.

221.    All Defendants knew of the infringing activity, the use and/or reproduction of the llama puppets, and materially caused and contributed to said infringement by facilitating, inducing, causing, and otherwise contributing to the the unauthorized reproduction, copying, display, and/or creation of derivative works of the llamas puppets, as more fully explained throughout this complaint.

222.    In addition, all Defendants are sophisticated individuals and/or corporations with extensive knowledge of copyright law. They knew or should have known that the conduct in question was infringing, but continued to infringe anyway.

223.    To the extent that Defendants did not directly infringe Plaintiff's exclusive rights, Defendants contributed to that infringement.

224.    All Defendants received significant financial benefits from the infringing activity.

225.    This conduct by Defendants caused damages to Plaintiff, as described in Count I and which are hereby incorporated by reference.

# COUNT III – Vicarious Copyright Infringement

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

226.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

227.    To make out a claim for vicarious infringement a plaintiff must show that a defendant has the right and ability to control the infringer's conduct and receives a direct financial benefit from the infringement.

228.    Here, as described above, all Defendants had the right and ability to direct the other infringers to stop infringing Plaintiff's works, but did not do so.

229.    All Defendants received significant financial benefits from the infringing activity.

230.    This conduct by Defendants caused damages to Plaintiff as delineated in Count I and incorporated by reference here.

\*\*\*\*\*

## COUNT IV – INDUCEMENT INFRINGEMENT

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

231.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

232.    To make out a claim for inducement a plaintiff must show that the defendant distributed a device and/or thing with the object of promoting its use to infringe copyright, as shown by clear expressions and actions taken to foster infringement. A defendant liable for inducement is liable for acts of infringement by third parties.

233.    The devices and/or things Defendants used to encourage third party infringement of Plaintiff's copyrights include but are not limited to their social media pages (e.g., Facebook, Instagram) and their "EMO-ji" app offered in the Apple iTunes store.

234.    The clear expression and actions taken by Defendants which show that these devices and/or things are being used to foster infringement are:

    a.    Defendants solicited infringing photos and derivative creations of Plaintiff's copyrights from third parties, and then posted those infringements on social media,

    b.    Defendants developed and promoted a chat App named "EMO-ji," the sole purpose of which was to encourage fans to use Plaintiff's llama copyrights on messaging apps ("Ride the wave with EMO-ji presented by Fall Out Boy. All the llama monster stickers you can handle. Use them to tell your friends how you really feel. Get to it (or don't)"), and

    c.    Defendants included language on the back of the *Llamania* album expressly encouraging infringement: "All rights reserved, unauthorized duplication is highly encouraged."

235.    Defendants intended that third parties infringe Plaintiff's copyrights and/or Defendants also knew that they were infringing and asking others to infringe on Plaintiff's copyrights.

236.    Plaintiff suffered the damages delineated in Count I and incorporated here by reference.

237.    Defendants are also liable for all damages Plaintiff suffered by third party infringement due to their inducing conduct.

*****

# COUNT V – DECLARATION OF AUTHORSHIP/OWNERSHIP

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

238.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

239.    Pursuant to 28 U.S.C. § 2201 Plaintiff hereby petitions that this Court declare that that Plaintiff is the author and/or owner of all copyrights in the two llama puppets, as well as all works and/or derivative works in any medium which reproduce and/or copy said works, in part or in whole—and otherwise determine Plaintiff's authorship and/or ownership interests.

240.    Furry Puppet Studio Inc. created the llama puppets, and copyrighted them at VAu001332963 and VAu001332960. This is prima facie proof of ownership.

241.    Defendants have created many, many derivative works using Plaintiff's copyrights. Plaintiff, as an author/owner of the original works, is entitled to be declared an owner (at least in part) of those derivative copyrights, pursuant to the Copyright Act and/or any other legal principles.  At no point was there any preexisting agreement over the ownership of the derivative works, and all ownership must be determined by the Copyright Act's default ownership rules.

242.    Note that even if Defendants' conduct alleged to be infringing is for any reason found not to be infringing, Plaintiff is still entitled to an ownership determination and all rights that flow from such a determination.

****

# COUNT VI –   ACCOUNTING - DECLARATORY RELIEF

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

243.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

244.    Plaintiff is the owner of the copyrights for the two llama puppets sculptures, and of all works which use and/or incorporate Plaintiff's copyrights in whole or in part.

245.    There should be an accounting of all monies Defendants have received, and which Plaintiff is due but has not been paid, as a result of the use of its copyrighted works.

246.    As Defendants are holding property and/or monies that rightfully belong to Plaintiff, they have a fiduciary duty to Plaintiff.

247.    Plaintiff notes that in the unlikely event that the works are determined to be joint works, then Defendants must account to Plaintiff for all profits.

248.    All monies properly due to Plaintiff but not distributed should be distributed, disgorged, and otherwise awarded to Plaintiff.

*****

## COUNT VII – Constructive Trust

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

249.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

250.    Defendants have profited greatly off the use of Plaintiff's intellectual property and are improperly retaining Plaintiff's monies, including by creating and exploiting derivative works which use and/or incorporate Plaintiff's copyrights.

251.    As Defendants are holding property and/or or monies that rightfully belong to Plaintiff, they have a fiduciary duty to Plaintiff.

252.    Plaintiff requests that all monies earned outside the "Young and Menace" video by use of the puppets, and all monies to be earned, be placed in a constructive trust.

*****

## COUNT VIII – Breach of Contract

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

253.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

254.    In the alternative to copyright infringement, Plaintiff alleges breach of contract.

255.    Breach of contract requires a contract, with specific terms, breach of those terms, and causation.

256.    Here, Plaintiff and Defendants (by and through Rubrik) had an implied contract/license to allow Defendants to use the puppets for the "Young and Menace" video.

257.    The expectation of the parties at the time the contract was consummated was that the puppets would be used only for this video, as was made clear by Defendants' repeated statements and conduct—and also by the very nature of the intellectual property.

258.    Every contract has an implied covenant of good faith and fair dealing.

259.    Here, Defendants purchased these puppets representing that the puppets were being used for a single music video. Based on these representations, compensation was negotiated.

260.    However, following the release of the music video, Defendants then used the puppets in a widespread manner that was never contemplated or foreseeable in March/April 2017.

261.    This use of the puppets, in a way that materially differed from what was negotiated, and which would have significantly altered the compensation structure in the contract, breached the implied covenant of good faith and fair dealing.

262.    Defendants have earned from Plaintiff's puppets huge amounts of money which, had the ultimate use of the puppets been known, would have substantially and diametrically altered the compensation Plaintiff would have demanded.

263.    As a result of this breach of contract, going far beyond the bounds of what was negotiated, Plaintiff has suffered severe harm, namely loss of compensation.

264.    Plaintiff is entitled to, as damages, the fee that would have been negotiated had Defendants accurately described their use of the puppets.

*****

# COUNT IX – Unjust Enrichment

*Furry Puppet Studio Inc.*

*v.*

*Fall Out Boy, Fall Out Boy, Inc., FOB Touring, Inc., Peter L.K. Wentz III, Patrick M. Stumph, Andrew J. Hurley, Joseph M. Trohman, DCD2 Entertainment, Inc., Universal Music Group, Inc., UMG Recordings, Inc., Sony Music Entertainment, Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Crush Music Media Mgt. Inc., Block Party Media, Inc., Manhead, LLC*

265.   Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

266.   In the alternative to copyright infringement, Plaintiff alleges unjust enrichment.

267.   To establish unjust enrichment, the plaintiff must establish that the Defendants benefitted, at the plaintiff's expense, and equity and good conscience require restitution.

268.   The claim lies when one party has received money or a benefit at the expense of another.

269.   Defendants have earned significant monies with the use of the puppets, by using them outside their initial intended use, without crediting or compensating Plaintiff.

270.   Regardless of whether Defendants' conduct is infringing or not, Defendants' ultimate widespread use of the puppets went far beyond anything that Plaintiff could have remotely or reasonably conceived of when negotiations were conducted in March/April 2017.

271.   Defendants have earned from Plaintiff's puppets huge amounts of money which, had the ultimate use of the puppets been known, would have substantially and diametrically altered the compensation Plaintiff would have demanded.

272.   Equity and good conscience require that the monies and benefits that Defendants realized at Plaintiff's expense over and above the negotiated amount, given the unforeseeable and unpredictable use of the puppets, be restituted to Plaintiff—as well as all monies and benefits to be realized in the future.

## <u>RELIEF REQUESTED</u>

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants, jointly and severally, on all counts and claims compensatory damages in an amount in excess of this court's jurisdictional limitations, thereby guaranteeing Plaintiff a jury trial, exclusive of interests and costs, and an award of punitive damages, as well as prejudgment interest, post judgment interest, delay damages, costs, and such equitable relief as the Court deems necessary; and requests that this Court determine and declare that Plaintiff be awarded for all counts:

a. Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction; this includes but is not limited to for the copyright claims::

    i. Actual damages;

    ii. Profits (direct and indirect); and/or

    iii. Statutory damages

b. Contract or quasi-damages including but not limited to consequential, incidental, direct, actual, and/or compensatory damages;

c. Declaratory relief;

d. Injunctive relief to enjoin defendants from further copying or using Plaintiff's work;

e. Impoundment of all copies of, and equipment used to make, the infringing advertisement;

f. Punitive damages to punish the Defendants for their extreme and outrageous and malicious conduct, self-interest, and duplicitous behavior;

g. Exemplary damages to set an example for others;

h. Attorneys' fees and court costs;

i. Delay damages; and/or

j. Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

*/s/ AJ Fluehr*

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyers for Plaintiff*
*/d/ March 15, 2019*

# Spoliation Notice – Preservation of Evidence

Plaintiff hereby demands and requests that Defendants take necessary actions to ensure the preservation of all documents, records, social media, communications, whether electronic or otherwise, items and things in their possession or control, or any entity over which any party to this action has control, or from whom any party to this action has access to, any documents, items, or things which may in any manner be relevant to or relate to the subject matter of the causes of action and/or the allegations of this complaint.

## Jury Trial Demand

Plaintiff hereby demands a 12-person jury trial.

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Malofiy*

*/s/ AJ Fluehr*

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ March 15, 2019_____*

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Civil Action Complaint is being served in accordance with the Federal Rules of Civil Procedure on the following:

**Fall Out Boy**
**Fall Out Boy, Inc. (d/b/a Chicago X Softcore Songs)**
**FOB Touring, Inc.**
60-62 E 11th St. | 7th Fl.
New York NY 10003

**Peter L. K. Wentz III**
**Patrick Stumph**
**Andrew Hurley**
**Joseph Trohman**
60-62 E 11th St. | 7th Fl.
New York NY 10003

**DCD2 Entertainment, Inc.**
60-62 E 11th St. | 7th Fl.
New York NY 10003

**Universal Music Group, Inc.**
**Defendant UMG Recordings, Inc.**
C T Corporation System
28 Liberty St.
New York, New York, 10005

The Corporation Trust Company
1209 Orange St
Wilmington, DE 19801

**Sony Music Entertainment**
**Sony/ATV Music Publishing, LLC**
**Sony/ATV Songs LLC**
25 Madison Ave,
New York, NY

The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, DE 19808

**CRUSH MUSIC MEDIA MANAGEMENT, INC.**
60-62 E. 11th Ave.
New York, NY 10003

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**BLOCK PARTY MEDIA, INC.**
456 Prospect Place | #2R
New York, NY 11238

**MANHEAD, LLC**
136 Baxter St. | Apt. 1B
New York City, NY 10013


*****

*Respectfully submitted,*
**FRANCIS ALEXANDER**, LLC
*/s/ Francis Malofiy*
*/s/ AJ Fluehr*
Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ March 15, 2019*

# Exhibit List for Complaint

Exhibit 1 – Llama Mom Copyright Registration

Exhibit 2 – Llama Dad Copyright Registration

Exhibit 3 – Monster Idea Images sent by Rubrik House

Exhibit 4 - Storyboard Sent by Rubrik House

Exhibit 5 - Email Chain about Repairs

# EXHIBIT 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kary A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**

**VAu 1-332-963**

**Effective Date of Registration:**
October 02, 2018

---

## Title

**Title of Work:** Llama Mom

## Completion/Publication

**Year of Completion:** 2015

## Author

- **Author:** Furry Puppet Studio Inc.
- **Author Created:** sculpture, 2-D artwork
- **Work made for hire:** Yes
- **Citizen of:** United States
- **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Furry Puppet Studio Inc.
220 36TH STREET, SUITE B521, BROOKLYN, NY, 11232, United States

## Rights and Permissions

**Organization Name:** Creedon PLLC
**Name:** James Creedon
**Email:** copyrights@creedonpllc.com
**Telephone:** (972)850-6864
**Address:** 2595 Dallas Parkway
Suite 420
Frisco, TX 75034 United States

## Certification

**Name:** James Creedon

**Date**:   October 02, 2018

---

**Correspondence:**   Yes
**Copyright Office notes:**   Basis for Registration: Graphic and sculptural features identified separately from and capable of existing independently of the utilitarian aspects of a useful article.

# Llama Mom
## Case 1-6994138741















www.furrypuppet.com/about-us/

GALLERY
ABOUT US
BLOG
CONTACT



*Maria Gurevich about to send off her latest creation*



# EXHIBIT 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**

## VAu 1-332-960

**Effective Date of Registration:**
October 02, 2018

---

## Title

**Title of Work:** Llama Dad

## Completion/Publication

**Year of Completion:** 2017

## Author

- **Author:** Furry Puppet Studio Inc.
  **Author Created:** sculpture, 2-D artwork
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Furry Puppet Studio Inc.
220 36TH STREET, SUITE B521, BROOKLYN, NY, 11232, United States

## Rights and Permissions

**Organization Name:** Creedon PLLC
**Name:** James Creedon
**Email:** copyrights@creedonpllc.com
**Telephone:** (972)850-6864
**Address:** 2595 Dallas Parkway
Suite 420
Frisco, TX 75034 United States

## Certification

**Name:** James Creedon

**Date**:   October 02, 2018

**Correspondence:**   Yes
**Copyright Office notes:**   Basis for Registration: Graphic and sculptural features identified separately from and capable of existing independently of the utilitarian aspects of a useful article.

## Llama Dad
## Case 1-7001073434

















Initial maquette:

fur:  distressed gray fur with added hue.   Skin: polar fleece in ivory / bone color, with added shading

# EXHIBIT 3



4



# EXHIBIT 4





VERSE 1:

Sunset  - A young boy discovers a magazine on a beach. It's a picture of a family smiling. He's shocked but we're not totally sure why.  The boy walks alone through the forest just after dusk. We catch glimpses of shadowy figures passing by and in front of the camera but we never fully see what they are.



The boy enters a rustic cabin in the woods. He sits down to dinner with his parents who look like monsters, but they're friendly and nice and loving. We see photos of him as a child with his puppet friends, on vacation with his parents, etc.



PRECHORUS:

We slowly circle dolly around him. Intercut with imagery of puppet body parts and the corresponding body parts of the human boy. Intercut with him confronting his parents.



FEEL
NOTHING

ALREADY
FORGOT YOU

CHORUS:

The Boy decides he needs to leave and heads into the woods. His parents sound the alarm and the woods are suddenly filled with neon lights. RUN LOLA RUN style. He goes on seemingly forever.

At the end of the chorus, our hero reaches a road outside the woods and realizes his quest will be much more difficult than he had originally planned. He's suddenly engulfed in smoke with quick tight shots, he transitions into an adult.

VERSE 2:

We see our hero enter a beautiful old car. Out of the window of the
car we see the puppet parents emerge from the woods fading away as
the car drives off into the unknown.



Our Hero reaches the city and emerges from the car as an adult. He begins to roam around the streets of Venice, he's dirty and homeless looking. He's overwhelmed and confused and continues walking. Stopping random people on the street to ask them questions, but they can't understand his gibberish.

PRECHORUS:

We find our hero standing at the Santa Monica Pier.
He walks towards it, slowly falling apart and unsure
where he is and why he came.

He enters a club, where Fall Out Boy are performing,
washed in purple pulsing light. And as the chorus hits he
is jolted into another manic state and begins to run.



CHORUS:

Crazy manic lighting and running like the first chorus, only this time it's carnival rides and laughing children instead of puppets and trees in the woods.



Jump cut to our hero in a bath tub (still an adult). The lighting
in the bathtub is strange and purple and neon. (Like the lighting
in the woods, and pier, etc.) We match cut back and forth between
him walking slow motion through the pier, defeated. The light is
flickering and odd. We're unsure if he was dreaming all of this in
the bathtub or what is happening.



He gets dressed, heads downstairs and sees his parents only they are human this time. Wearing the same clothes but fighting and yelling. The world we saw from before was in his head. He had built it up as a safeguard and now he's back to reality of his life where he's not accepted and not wanted.

The video is intercut with a performance by Fall Out Boy in a club on the pier. They are drenched in purple flourescent pulsing light.

# EXHIBIT 5

**Forwarded Conversation**
**Subject: Fall Out Boy**
------------------------

From: **Brendan Walter** <brendan@███████████
Date: Thu, Sep 14, 2017 at 3:01 PM
To: Zack Buchman <zack@████████████

Hey Zack!

Hope you are well. I wanted to check in to see if it would be possible to make duplicates of those puppets you made for the music video earlier this year. Let me know what you think and what a timeline and budget might be.

Thanks!

--

Brendan Walter
Crush Music
p 215-378-████████
brendan@████████
http://www.crushmusic.com

----------
From: **Zack Buchman** <zack@████████████
Date: Mon, Sep 18, 2017 at 3:09 PM
To: Brendan Walter <brendan@████████████
Cc: Studio Manager <Studio@████████████

Hi Brendan,
Hope all is amazing. Sorry about the delay, I just came back to the office.
We can do it if the delivery date can be November 15th. Would that work for you?

Best,
Zack

---
**Zack Buchman**
Creative Director  |  Furry Puppet
T: (917) 338-████████  |  Zack@████████

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

----------
From: **Brendan Walter** <brendan@████████████
Date: Mon, Sep 18, 2017 at 3:18 PM
To: Zack Buchman <zack@████████████
Cc: Studio Manager <Studio@████████████


Unfortunately the tour starts on the 15th of October so we'll need them by then.

Would it be possible just to fix up the existing puppets between now and then? They are currently in NYC

Brendan Walter
Crush Music
p 215-378-████
brendan@████████████
http://www.crushmusic.com


----------
From: **Zack Buchman** <zack████████████
Date: Mon, Sep 18, 2017 at 3:23 PM
To: Brendan Walter <brendan@████████████
Cc: Studio Manager <Studio@████████████


Hi Brendan,
Which parts of the costumes require fixing and what are the issues?
Best, Zack


---
**Zack Buchman**
Creative Director  |  Furry Puppet
T: (917) 338-████████  | Zack@████████

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.


----------
From: **Brendan Walter** <brendan@████████████
Date: Mon, Sep 18, 2017 at 3:29 PM
To: Zack Buchman <zack@████████████
Cc: Studio Manager <Studio@████████████

The eyeholes in the neck are starting to be more noticeable and the zippers have been getting messed up. Also just a general once-over of mending parts. That'd be great.

Brendan Walter
Crush Music
p 215-378-█████
brendan@████████████
http://www.crushmusic.com

----------
From: **Brendan Walter** <brendan@████████████>
Date: Tue, Sep 19, 2017 at 2:51 PM
To: Zack Buchman <zack@███████████>
Cc: Studio Manager <Studio@███████████>

Let me know what you think - thanks!

Brendan Walter
Crush Music
p 215-378-█████
brendan@████████████
http://www.crushmusic.com

----------
From: **Zack Buchman** <zack@███████████>
Date: Tue, Sep 19, 2017 at 4:44 PM
To: Brendan Walter <brendan@████████████>
Cc: Studio Manager <Studio@███████████>

Hi Brendan,
We're not available at the moment to do the maintenance work.
I can recommend someone to do the touch up work but would still advise that we create a new pair as the current costumes were built for a video shoot and are not durable enough for a tour. Let me know what you think.
Best, Zack

---
**Zack Buchman**
Creative Director  | Furry Puppet
T: (917) 338-████████  | Zack@████████████

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

----------

From: **Brendan Walter** <brendan@ ████████████
Date: Tue, Sep 19, 2017 at 4:58 PM
To: Zack Buchman <zack@ ████████████
Cc: Studio Manager <Studio@ ████████████


Of course. A recommendation would be awesome. Let me know. Thanks.

Brendan Walter
Crush Music
p 215-378- ████████
brendan@ ████████████
http://www.crushmusic.com


----------

From: **Zack Buchman** <zack ████████████
Date: Tue, Sep 19, 2017 at 5:00 PM
To: Brendan Walter <brendan@ ████████████
Cc: Studio Manager <Studio@ ████████████


Copying Stephanie


---
**Zack Buchman**
Creative Director  |  Furry Puppet
T: (917) 338- ████████  |  Zack ████████████

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.


----------

From: **Studio Manager** <studio@ ████████████
Date: Wed, Sep 20, 2017 at 3:00 PM
To: Zack Buchman <zack@ ████████████
Cc: Brendan Walter <brendan@ ████████████


Hi Brendan,
- I recommend Jamie Shannon to do the repair work. He's based in Canada but he's absolutely

wonderful.

Jamie Shannon <jamie@███████████
(626) 787-███
- Even with the repairs, the current costumes were not built to last a tour. this could possibly become a safety issue for the performers inside. if you would like us to fabricate a more durable pair please let me know at your earliest convenience as this is the busiest time of the year for us.

Best,
Stephanie

--

**Furry Puppet Studio**
T: (917) 338-███   |   hello███████████
www.furrypuppet.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

----------
From: **Brendan Walter** <brendan@███████████
Date: Wed, Sep 20, 2017 at 3:07 PM
To: Studio Manager <studio@███████████
Cc: Zack Buchman <zack@███████████

Thanks! Unfortunately the tour cannot be pushed back so they have to be finished by early October either way if that's what we are doing and it doesn't seem like that will work out but I appreciate it.

I'll reach out to Jamie about fixing the current suits. Thanks!

Brendan Walter
Crush Music
p 215-378-███
brendan@███████████
http://www.crushmusic.com

----------
From: **Brendan Walter** <brendan@███████████
Date: Wed, Sep 20, 2017 at 4:39 PM
To: Studio Manager <studio@███████████
Cc: Zack Buchman <zack@███████████

Jamie said she can't repair anything. Do you have any other recommendations?

Brendan Walter
Crush Music
p 215-378█████████
brendan@████████████
http://www.crushmusic.com

On Sep 20, 2017, at 12:00 PM, Studio Manager <studio@██████████████ wrote:

\----------
From: **Studio Manager** <studio@███████████████
Date: Wed, Sep 20, 2017 at 4:54 PM
To: Brendan Walter <brendan@██████████████
Cc: Zack Buchman <zack██████████████████

Hi Brendan,
You can try David Valentine, he lives in New York:
dvpuppets███████████
610-733███████

\--

**Furry Puppet Studio**
T: (917) 33█████   |   hello@████████████
www.furrypuppet.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

\----------
From: **Brendan Walter** <brendan@███████████████
Date: Wed, Sep 20, 2017 at 4:57 PM
To: Studio Manager <studio@████████████████
Cc: Zack Buchman <zack@███████████████

Thanks!

Brendan Walter

Crush Music
p 215-378 ███████
brendan@ ████████████
http://www.crushmusic.com


On Sep 20, 2017, at 1:54 PM, Studio Manager <studio@ ██████████  wrote:

    dvpuppets ███████
    610-733 ██████